JUDGE OETKEN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERNANDO HOYOS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>ANDREW S. GORDON and the ESTATE OF CHRISTOPHER H. BROWNE, Jointly and Severally,<br><br>Defendants. | Civ. Action No. _____<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## NATURE OF THE ACTION

1.   Plaintiff was a personal chef serving as a general domestic employee for Defendants in their private residences in New York County, New York, Suffolk County, New York and Florida. Plaintiff brings this action to recover unpaid overtime wages owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 650 *et seq.* and to recover compensation arising out of Defendants' unlawful retaliation for attempting to protect his right to overtime wages pursuant to the FLSA and NYLL. Plaintiff brings his FLSA claims for unpaid overtime wages on behalf of himself and all other similarly situated domestic employees of Defendants.

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Plaintiff Hernando Hoyos ("Hoyos" or "Plaintiff") was, at all relevant times, an adult individual residing in New York County, Suffolk County and, at times, in Florida. Hoyos consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

6. Defendant Andrew S. Gordon ("Gordon") was, at all relevant times, an adult individual residing at 515 Park Avenue, New York, New York 10022, and for significant periods of time within East Hampton, New York. Gordon served as Hoyos' "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2, as well as NYLL § 2 and the regulations thereunder, because he set the hours and terms of Plaintiff's employment and had the right to hire and fire Hoyos.

7. Defendant Estate of Christopher H. Browne ("Estate"), represented by Cravath, Swaine & Moore LLP, served as Hoyos' "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2, as well as NYLL § 2 and the regulations thereunder, because the Estate was responsible for overseeing Hoyos' working conditions and assisted Gordon in setting Hoyos' hours worked and wages paid. Gordon and the Estate are hereinafter referred to jointly as the "Defendants."

## COLLECTIVE ACTION ALLEGATIONS

8. Pursuant to 29 U.S.C. §§ 206, 207 and 216(b), Plaintiff brings his First Cause of Action individually and as a collective action under the FLSA on behalf of all other domestic

2

employees of the Defendants including house cleaners, assistants and caretakers (the "Collective Action Members" or the "Collective Action"), who are or were employed by Defendants since July 12, 2009 and through the entry of judgment in this case (the "Collective Action Period").

9. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime wages for work performed over 40 hours each week. As a result of those policies, Plaintiff and the Collective Action Members did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) per week.

## NYLL ALLEGATIONS

10. The New York Labor Law claims are brought on behalf of all plaintiffs who opt-in to this action who were employed by Defendants at any time since July 12, 2006 to the entry of judgment in this case (the "NY Plaintiffs").

## STATEMENT OF FACTS

11. At all relevant times, Defendants have been and continue to be employers within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

12. Upon information and belief, at all relevant times, the Defendants had gross revenues in excess of $500,000.00.

13. At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

14. At all relevant times, Defendants employed and/or continue to employ Plaintiff within the meaning of the NYLL, §§ 2 and 651.

15. Upon information and belief, Defendants own residences located at: (i) 515 Park Avenue, New York, New York; (ii) 60, 64 Further Lane, East Hampton, New York; (iii) Palm Beach, Florida and (iv) Miami Florida. Defendants employed a staff of employees to manage their properties including a senior house manager, an assistant house manager, a vendor manager, two housekeepers and a cook. The Defendants' 2009 budget for their property staff exceeded $500,000.

16. Upon information and belief, in addition to Plaintiff, several of Defendants' other employees have not received: (i) overtime pay as required by the FLSA and NYLL, and (ii) promised bonuses provided for in their employment agreements.

17. Plaintiff Hoyos was hired as a personal chef for Christopher H. Browne ("Browne") and Defendant Gordon in or around June 2009. Hoyos was trained under world-renowned chefs at New York City's finest restaurants and had served as the personal chef of Browne's close friend for many years prior to coming to work for Browne.

18. When Hoyos was hired by Browne, Browne and Hoyos agreed to a compensation package which included, among other things, the following: (i) a salary of $100,000 per year; (ii) a $25,000 year-end bonus; (iii) two weeks of paid vacation per year; (iv) medical insurance, and (v) residence in a two-bedroom apartment near Browne and Gordon's residence at 515 Park Avenue, New York, NY 10022. While working for Browne, Hoyos received a portion of his wages through payroll check and the other portion was paid to Hoyos "off-the-books", through a personal check from Browne.

19. Throughout Hoyos' time working for Browne and Gordon, Hoyos was primarily responsible for cooking, although he also performed chauffeur duties for Browne, typically only working approximately forty (40) hours each week in total.

20. Shortly after Browne passed away in December 2009, Gordon requested that Hoyos continue working in his position, promising that everything would stay the same as it was prior to Browne's death. Hoyos agreed to continue working for Gordon and the Estate, although soon thereafter Hoyos' job duties and working conditions drastically changed.

21. Starting in or around January 2010, Gordon paid Hoyos entirely "off-the-books" through a personal check, until in or around July 2010, when Gordon began paying Hoyos through ADP. Throughout this time, upon information and belief, Gordon was reimbursed for Hoyos' wages by the Estate.

22. While Hoyos was initially hired to work as a chef for approximately forty (40) hours each week, Gordon required Hoyos to remain on call 24 hours a day to (i) perform housekeeping and general maintenance work rather than his former work as a chef; (ii) drive Gordon; (iii) run errands; and (iv) serve as the sole caretaker for the late Mr. Browne's dog Orville, who takes four medications each day, suffers from severe epilepsy and requires numerous walks every day. Hoyos was forced to care for Orville every day, including Mondays and Tuesdays, which were previously Hoyos' "days off."

23. Beginning in late December 2009 through approximately October 2011, Mr. Hoyos was required to perform bona fide job-related activities for a *minimum* of eighty (80) hours per week. Thereafter, in or around October 2011, Gordon informed Hoyos that he should only work forty (40) hours per week, stating that he did not have "an overtime budget." Despite this statement, Gordon continued to require Hoyos to shop, clean, cook, drive, run errands and care for his dog Orville, which took at least eighty (80) hours per week to complete. Gordon also acknowledged in writing that he had not used Hoyos as a personal chef, in breach of the initial contract between Browne and Hoyos.

5

24. Upon information and belief, Gordon's statement that he did not have an overtime budget meant that the Estate would not provide for money in addition to Hoyos' salary for which to pay Hoyos' overtime premiums. The Estate and Gordon were thus jointly responsible for controlling the conditions of Hoyos' employment, because they did not provide the appropriate budget from which to pay Hoyos the legally-required wages for his work.

25. While Gordon directed Hoyos in his daily work duties, the Estate used and benefited from the work of Hoyos because his work was cleaning and maintaining the Estate's properties and caretaking for Browne's dog. In addition, upon information and belief, the Estate was responsible for setting Hoyos' compensation based upon the previously agreed-upon compensation package between Hoyos and Browne. To that end, Gordon was responsible for submitting to the Estate certain invoices for the work performed by Hoyos, so that Gordon would be reimbursed for Hoyos' work. Such invoices were labeled with the heading "Timesheet for Hernando Hoyos" and contained Hoyos' hours worked in the following three categories: "515 Park Estate, Cleaning", "515 Park Estate, Repair & Maintenance", and "East Hampton Estate, Repair & Maintenance." Beginning in or around January 2011, Hoyos was also required to fill out time sheets to record his hours worked, which listed the following categories of time: "515 Park Ave, Estate", "Easthampton, A.G. Trust", and "Personal".

26. The proposed 2012 budget for housekeeping and property management of the Estate properties indicated that the Estate is responsible for a 40% share of the $100,000 salary plus $25,000 bonus for the Further Lane property.

27. In or around March 2012, Plaintiff had finally had enough of the extraordinarily long hours for which he did not receive any compensation and he retained counsel to seek the

6

unpaid wages and overtime. Hoyos' counsel sent Defendants a letter dated March 23, 2012, setting forth Plaintiff's right to the unpaid wages.

28. Soon after receipt of the letter setting forth Hoyos' right to unpaid wages, Gordon terminated Hoyos' employment effective April 18, 2012 and demanded that Hoyos vacate the apartment in which he resides. Hoyos was never provided a reason for his termination.

29. While Hoyos received $17,500 of his 2009 bonus, which had been agreed-to be $25,000, in August 2010, he did not receive his bonuses for 2010 or 2011. While Hoyos was able to take a picture of his intended 2009 bonus check, which had been drawn on a check payable from the Estate totaling $25,000, Defendants refused to actually give him this check and instead he received a check for $17,500 from Gordon. Defendants' failure to pay an annual bonus of $25,000 for 2009, 2010 and 2011 is in breach of his compensation package agreed to with Browne and Gordon. Hoyos also only received one week of vacation in 2010 and did not receive any vacation during 2011, despite the fact that his agreed-upon compensation package included two weeks of vacation each year.

30. The work performed by Plaintiff required little skill and no capital investment.

31. The work performed by Plaintiff did not require the exercise of independent business judgment.

32. Defendants have simultaneously employed other individuals like Plaintiff during the Collective Action Period and continuing until today, to perform household work as house cleaners, assistants and care-takers. The exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery.

33. Like Plaintiff, Defendants' other employees were required to work in excess of forty (40) hours per week, yet Defendants failed to pay these other employees overtime compensation for hours worked in excess of forty (40) hours per week. This refusal to pay overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' other domestic employees.

34. Upon information and belief, throughout the Collective Action Period, Defendants failed to maintain accurate and sufficient time records reflecting the hours worked by Plaintiff and Defendants' other employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

35. Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

36. By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

37. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

38. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable

attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

39. Plaintiff, on behalf of himself and the NY Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

40. Defendants willfully violated the Plaintiff's rights and the rights of those who elect to join this action by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

41. Defendants' failure to pay overtime caused Plaintiff and the opt-ins to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al. and 196-d.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

42. Plaintiff, on behalf of himself and the NY Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

43. Plaintiff and, upon information and belief, the NY Plaintiffs entered into employment agreements with Defendants providing for, among other things, a specific yearly salary, bonus and paid vacation days.

44. Defendants breached the employment agreements by failing to pay Plaintiff and,

9

upon information and belief, the NY Plaintiffs the specified yearly bonus payments for 2010 and 2011.

45. As a result of its breach of these employment agreements, Defendants are liable to Plaintiff and the NY Plaintiffs in an amount yet to be determined.

## FOURTH CAUSE OF ACTION
## QUANTUM MERUIT (Pled in the Alternative)

46. Plaintiff, on behalf of himself and the NY Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

47. Plaintiff and the NY Plaintiffs have performed numerous and valuable services at the request and for the benefit of Defendants. The reasonable value of those services for which Plaintiff and the NY Plaintiffs have not been paid is yet to be determined.

48. As a result, Defendants are liable to Plaintiff and the NY Plaintiffs in an amount not yet determined.

## FIFTH CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNLAWFUL RETALIATION

49. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

50. Plaintiff attempted to enforce his rights under the Fair Labor Standards Act by transmitting through counsel a formal written complaint about FLSA violations in an effort to institute proceedings regarding same.

51. Plaintiff's actions were protected activity under the FLSA.

52. Defendants retaliated against Plaintiff after Plaintiff had submitted a formal written complaint about FLSA wage and hour violations as alleged herein.

10

53. By engaging in the retaliatory acts alleged herein, Defendants retaliated against Plaintiff, discriminated against him, and penalized him in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

54. Plaintiff has suffered damages, including but not limited to emotional distress damages and lost wages as a result of Defendants' retaliation.

55. Defendants' retaliation against Plaintiff altered the terms and conditions of his employment.

56. Plaintiff is entitled to equitable relief, reinstatement, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL RETALIATION

57. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

58. Plaintiff attempted to enforce his rights under the New York Labor Law by transmitting through counsel a formal written complaint about NYLL violations in an effort to institute proceedings regarding same.

59. Plaintiff's actions were protected activity under New York Labor Law § 215.

60. Defendants retaliated against Plaintiff after Plaintiff had submitted a formal written complaint about NYLL wage and hour violations as alleged herein.

61. By engaging in the retaliatory acts alleged herein, Defendants retaliated against

11

Plaintiff, discriminated against him, and penalized him in violation of New York Labor Law § 215.

62. Plaintiff has suffered damages, including but not limited to emotional distress damages and lost wages as a result of Defendants' retaliation.

63. Defendants' retaliation against Plaintiff altered the terms and conditions of his employment.

64. Notice of this claim has been served upon the Attorney General pursuant to New York Labor Law § 215(2).

65. Plaintiff is entitled to equitable relief, monetary relief including but not limited to reinstatement, compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

   a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative Collective Action Members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

   b. An order tolling the relevant statutes of limitations;

   c. An order declaring that Defendants violated the FLSA;

   d. An order declaring that Defendants' violations of the FLSA were willful;

e. An order declaring that Defendants violated the NYLL;

f. An award of overtime compensation due under the FLSA and NYLL;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the NYLL;

h. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

i. An award of prejudgment and post-judgment interest;

j. An award of compensatory damages for the emotional distress, pain, and suffering caused by retaliation;

k. An award of punitive damages under the FLSA for retaliation;

l. An award of punitive damages under the NYLL for retaliation;

m. An award of damages for common-law breach of contract;

n. An order reinstating Plaintiff to his position;

o. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York

July 13, 2012

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Attorney for Plaintiffs, Individually, and
on Behalf of All Other Persons Similarly Situated
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

March 13, 2012
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Andrew Gordon/Estate of Chris Browne and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage and overtime as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_[signature]_  03/13/12           Hernando Hoyos
Signature       Date              Printed Name